IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MELODIE I. T.,<br><br>    Plaintiff,<br><br>  vs.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br><br>    Defendant. | 20-CV-80-M-KLD<br><br><br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant") on her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq. (Doc. 1.) On December 30, 2020, Defendant filed the Administrative Record. (Doc. 16.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for further administrative proceedings. (Doc. 18.) The motion is fully briefed and ripe for the Court's review. (Docs. 18, 19.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court recommends that the Commissioner's decision be

**AFFIRMED**.

## I.    Procedural Background

Plaintiff protectively filed an application for Title II and Title XVI disability

benefits on July 7, 2016, alleging disability since December 12, 2014. (Doc. 16 at

193.) Plaintiff later amended her alleged onset date to October 11, 2016. (Doc. 16 at

51.) Plaintiff's claim was denied initially and on reconsideration, and by an ALJ

after an administrative hearing. (Doc. 16 at 78-93, 95-112, 16-35.) Plaintiff

requested review of the decision, and on April 6, 2020, the Appeals Council denied

Plaintiff's request for review. (Doc. 16 at 7-9.) Thereafter, Plaintiff filed the instant

action.

## II.   Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity,

allowing for judicial review of social security benefit determinations after a final

decision of the Commissioner made after a hearing. *See Treichler v. Commissioner

of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside

the Commissioner's decision "only if it is not supported by substantial evidence or

is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.     Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190,

1193-94 (9th Cir. 2004).

The Commissioner assesses disability through a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still perform on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

/ / /

## III.  **Discussion**

The ALJ followed the five-step sequential evaluation process in evaluating

Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2021. (Doc. 16 at

21.) The ALJ further found that Plaintiff had not engaged in substantial gainful

activity after the alleged onset date of October 11, 2016. (Doc. 16 at 21.)

At step two, the ALJ found that Plaintiff has the following severe

impairments: right shoulder dysfunction from osteoarthritis, superior labral tear

from anterior to posterior (SLAP lesion), tendinosis, and mild right carpal tunnel

syndrome. (Doc. 16 at 21.) At step three, the ALJ found that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals any

impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P,

app. 1. (Doc. 16 at 24.)

At step four, the ALJ found that Plaintiff had the residual functional capacity

to:

> perform light work as defined in 20 CFR 404.1567(b), such that she can
> push, pull, lift, or carry 20 pounds occasionally and 10 pounds frequently
> with her left upper extremity, but only 10 pounds, maximum, and less than 10
> pounds, frequently, with her right upper extremity. In an 8-hour workday, she
> can stand/walk for about 6 hours and sit for about 6 hours. With her right
> upper extremity, she can occasionally push/pull, and frequently reach (in all
> directions), handle, and finger. She must avoid concentrated exposure to
> extreme temperatures, vibration, noise levels greater than moderate (3/5 as

defined in the Selected Characteristics of Occupations), and hazards. She can understand, remember, and carry out simple, detailed, and complex tasks. She can maintain attention concentration, persistence, and pace for such work for 8-hour workdays and 40-hour workweeks. She can tolerate interaction with supervisors, coworkers, and the public. She can tolerate usual work situations and changes in routine work settings.

(Doc. 16 at 25.)

Based on this residual functional capacity, the ALJ found that Plaintiff could not perform her past relevant work as a rural mail carrier but could perform her past relevant work as a mortgage clerk. (Doc. 16 at 32-33.) Although the ALJ found that Plaintiff could perform past relevant work, the ALJ proceeded to step five and found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.. (Doc. 16 at 33.) Thus, the ALJ found that Plaintiff was not disabled. (Doc. 16 at 34.)

Plaintiff argues the ALJ erred in the following ways: (1) improperly evaluating the medical opinions when evaluating whether Plaintiff had a severe mental impairment at step two, and whether Plaintiff's Chronic Regional Pain Syndrome ("CRPS") was medically determinable; (2) failing to issue an RFC finding that is supported by substantial evidence; (3) improperly evaluating Plaintiff's ability to return to her past relevant work; and (4) improperly evaluating Plaintiff's credibility. (Doc. 18 at 2.) The Court addresses each argument in turn.

/ / /

## A. The ALJ's Mental Health and CRPS findings

Plaintiff argues the ALJ inadequately considered the medical opinion evidence concerning her mental health, resulting in an improper finding that Plaintiff's mental impairments are non-severe. Plaintiff also challenges the ALJ's consideration of the opinion evidence in concluding Plaintiff's CRPS was not a medically determinable impairment.

The administrative record contains several medical opinions and records relevant to Plaintiff's functioning during her alleged period of disability. Plaintiff challenges the ALJ's evaluation of medical source opinions provided by treating physicians related to Plaintiff's mental impairments and CRPS. (Doc. 18 at 8.) The Commissioner counters that the ALJ reasonably evaluated the medical opinions and other medical evidence in the record. The Commissioner additionally argues that to the extent the ALJ did err in her findings, any such error is harmless.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The

opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors include the "[l]ength of the treatment relationship and the frequency of the examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant to the ALJ's evaluation of any medical opinion, not limited to that of a treating physician, include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) the specialization of the treating or examining source; and (4) any other factors that are brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830. To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The administrative record in this case contains conflicting opinions from treating, examining, and non-examining sources regarding Plaintiff's functioning during the relevant period. Given these conflicting opinions, the ALJ was required to give specific and legitimate reasons for discrediting one opinion in favor of another.

The standard for weighing the medical evidence is modified when an ALJ is considering notes provided by nurse practitioners. Pursuant to the regulations applicable to Plaintiff's claim, nurse practioners are considered "other sources" who cannot give medical opinions but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. 20

C.F.R. § 404.1502; SSR 06-03p. *See also*, 20 C.F.R. §§ 404.1513(a)(4),

416.913(a)(4). The ALJ may reject the opinion of a nurse practitioner by providing

germane reasons for doing so. *Molina*, 674 F.3d at 1111-12.

### 1.    Mandi Griffin, M.D. and Irene Walters, APRN

Plaintiff argues the ALJ failed to accord appropriate weight to the opinions of

Dr. Griffin and APRN Walters concerning Plaintiff's PTSD and anxiety. (Doc. 18

at 9.) Had the ALJ attributed more weight to their findings, Plaintiff argues the ALJ

would have found Plaintiff's mental impairments to be severe. (Doc. 18 at 10.) Dr.

Griffin began treating Plaintiff in December 2014 in connection to her workman's

compensation claim concerning an injury to her right shoulder from a dog bite.

(Doc. 16 at 360.) On March 3, 2015, Dr. Griffin wrote a letter to Plaintiff's

workman's compensation coordinator explaining that she noticed Plaintiff

exhibiting symptoms of posttraumatic stress disorder ("PTSD"). (Doc. 16 at 360.)

Dr. Griffin specifically identified the symptoms of mood changes, excessive startle

reflex, nightmares, and panicking. (Doc. 16 at 360.) Dr. Griffin stated that she had

"concerns that if [Plaintiff's] PTSD is not addressed, it could be more limiting to

her than her shoulder injury itself" and recommended Plaintiff seek psychiatric

evaluation and start medication to help abate these symptoms. (Doc. 16 at 360-61.)

Dr. Griffin thereafter referred Plaintiff to APRN Walters for mental health

treatment. On September 8, 2016, Dr. Griffin noted Plaintiff was no longer having nightmares. (Doc. 16 at 440.)

APRN Walters established care with Plaintiff on March 19, 2015. (Doc. 16 at 399.) APRN Walters considered Plaintiff's reported symptoms and interpreted Plaintiff as having moderate depression and PTSD. (Doc. 16 at 399, 402.) She noted that Plaintiff reported difficulty sleeping due to nightmares, and prescribed Prazosin to help control the nightmares. (Doc. 16 at 399-402.) The March 19, 2015 treatment note is the only medical record authored by APRN Walters cited by Plaintiff. It is also the only record by APRN Walters found in the record.

Plaintiff argues the ALJ attributed little weight to the opinions of Dr. Griffin and APRN Walters despite medical evidence supporting a finding that Plaintiff's mental impairments are severe. Plaintiff claims the ALJ rejected their opinions based on their inconsistency with Dr. Mozer's mental status evaluation, but in the same stroke ignored Dr. Mozer's discussion of Plaintiff's depression, PTSD, and memory/concentration issues. (Doc. 18 at 10.) Similarly, Plaintiff argues the ALJ ignored Dr. Mozer's finding that additional testing and medical input as to the severity of Plaintiff's mental health impairments was necessary. (Doc. 18 at 10.)

In response, the Commissioner argues the ALJ properly considered Plaintiff's PTSD, depression, and anxiety. The Commissioner first points out that clinical

findings and diagnoses are not necessarily medical opinions under the Social Security Act. Next, the Commissioner explains that although the ALJ did not find Plaintiff's mental impairments to be severe at step two, the ALJ "fully accounted for the psychiatric diagnoses and accompanying clinical findings when she found that Plaintiff had medically determinable impairments of PTSD, depression, and anxiety." (Doc. 19 at 5.)

The ALJ's step two analysis discussed Plaintiff's reported mental impairments of depression, anxiety, and PTSD. (Doc. 16 at 22.) The ALJ found the impairments "do not cause more than minimal limitation to the Plaintiff's ability to perform basic mental work activities and are therefore nonsevere." (Doc. 16 at 22.) In making this determination, the ALJ found the medical evidence did not support a severe finding and did not present limitations that would interfere with Plaintiff's ability to work. (Doc. 16 at 22-23.) For example, the ALJ considered neurological examination notes indicating Plaintiff exhibited intact insight and judgment and no expressed anxiety, and a mental status evaluation report finding Plaintiff's depression was mild to moderate. (Doc. 16 at 569, 580.) The ALJ also discussed how the medical evidence concerning Plaintiff's mental impairments affected her "paragraph B" functional areas, including remembering information, interacting with others, concentrating, and managing oneself. (Doc. 16 at 22-23.)

Although the ALJ did not address Dr. Griffin's letter in the discussion of Plaintiff's mental impairments, the record supports the ALJ's finding that Plaintiff' mental impairments are non-severe. The medical records relied on by the ALJ acknowledge Plaintiff's depression, but conclude it is mild to moderate and does not present significant limitations on Plaintiff's functional abilities. (Doc. 16 at 578.) For example, Dr. Mozer evaluated Plaintiff's mental status and opined that although Plaintiff had elements of PTSD, "I don't think this affects her ability to relate to people or intrudes much into her thinking." (Doc. 16 at 580.) Dr. Mozer also noted Plaintiff's reports of concentration issues and "downcast" nature, but found she was able to help with chores, cook, drive, read, watch TV, play computer games, confer with attorneys, and participate in church activities. (Doc. 16 at 580.) Furthermore, while the ALJ could have more explicitly discussed Dr. Griffin's letter and APRN Walters' treatment notes, there is no indication that those findings are supported by clinical evaluation or establish limitations contradictory to those found by Dr. Mozer. (Doc. 16 at 360, 399, 578.) To the contrary, APRN Walters' treatment notes and Dr. Mozer's evaluation both consider Plaintiff to suffer from moderate PTSD and depression. (Doc. 16 at 399, 402, 569, 580.)

Even if the ALJ had erred by failing to state specific and legitimate or reasons for disregarding the findings of Dr. Griffin and germane reasons for

14

discounting APRN Walters' treatment notes, any such error would be harmless. Plaintiff's argument concerning these two physicians is based on the ALJ's purported failure to identify her mental impairments as severe at step two. Step two is for screening purposes and a finding of non-severity does not relieve the ALJ from further considering an impairment when determining the residual functional capacity. 20 C.F.R. § 404.1545(1)(5)(i); *Smolen*, 80 F.3d at 1290 (The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims.").

The ALJ found Plaintiff's mental impairments were medically determinable under the regulations. (Doc. 16 at 23.) The ALJ additionally found Plaintiff had severe impairments and continued with the disability evaluation. In that evaluation, the ALJ considered severe and non-severe limitations caused by Plaintiff's impairments, including mental health limitations. (Doc. 16 at 29, 31.) The ALJ specifically considered Plaintiff's social functioning, understanding, memory, concentration, and self-management in formulating her residual functional capacity. (Doc. 16 at 25-32.) *See Baldwin v. Astrue*, 2010 WL 1946902 (C.D. Cal. May 10, 2010) (finding an ALJ's error at step two to be harmless where "the ALJ accounted for the symptoms and limitations allegedly caused by her [impairment] in [the] residual functional capacity at step four"); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Alleged error at step two was harmless where step two was decided

in Plaintiff's favor).

2.     The ALJ's Medically Determinable Impairment Finding

Plaintiff next argues the ALJ erred by rejecting her treating physicians' opinions of her CRPS to conclude Plaintiff's CRPS was not medically determinable. Plaintiff maintains that although the ALJ considered CRPS, her rationale for determining the condition was not medically determinable was not supported by substantial evidence.

CRPS, also known as regional sympathetic dystrophy syndrome ("RSD") is a spontaneous pain condition following trauma. SSR-03-02p (2003 WL 22399117). On February 2, 2015, Plaintiff visited Dr. Jeremiah Clinton due to right shoulder pain and numbness. (Doc. 16 at 960.) Dr. Clinton noted that Plaintiff reported experiencing numbness and tingling that extends down her arm into her hand. (Doc. 16 at 960.) Upon examination, Dr. Clinton noted Plaintiff had "exquisite pain with any attempt at palpation or range of motion" and "significant allodynia over the lateral muscle belly." (Doc. 16 at 966.) Dr. Clinton diagnosed Plaintiff with "Complex regional plane [sic] syndrome involving the right shoulder with axillary neurapraxia." (Doc. 16 at 968.) He noted Plaintiff was exhibited "signs that are concerning for RSD with significant allodynia[.]" (Doc. 16 at 968.) Finally, Dr. Clinton stated, "we are going to concentrate on the apparent RSD" and referred

Plaintiff to the Advanced Pain and Spine Institute. (Doc. 16 at 968.) On March 31, 2015 Dr. Clinton wrote a letter opining that Plaintiff's "primary issue is reflex sympathetic dystrophy[.]" (Doc. 16 at 410.)

In June 2015 Plaintiff received four stellate ganglion blocks from Dr. Patrick Danaher to alleviate the pain in her arm related to CRPS. (Doc. 16 at 544-551.) On February 5, 2016, Plaintiff visited Vanessa M. Lipp, PA-C at the Advanced Pain and Spine Institute. (Doc. 16 at 523.) PA-C Lipp noted Plaintiff reported her "shoulder pain is present constantly". (Doc. 16 at 523.) Upon exam, PA-C Lipp noted "[t]here is bluish hue of the right arm, and the right arm feels chilled." (Doc. 16 at 523.)

On March 3, 2016, Plaintiff visited Dr. Danaher again concerning her CRPS. (Doc. 16 at 528.) Dr. Danaher noted Plaintiff reported her pain was increasing and requested she be given additional stellate ganglion blocks for her pain. (Doc. 16 at 531.) On April 25, 2016, Dr. Larry R. Stayner completed a new patient evaluation regarding Plaintiff and her right shoulder pain. (Doc. 16 at 411.) Dr. Stayner stated that Plaintiff "does have RSD but she has significant pathology in the shoulder which could be contributing to her pain." (Doc. 16 at 411.) Dr. Stayner also discussed the option of arthroscopic surgery to help with Plaintiff's shoulder tear but stated Plaintiff would "have to continue treatment with Dr. Danaher as well for

her RSD." (Doc. 16 at 411.)

Dr. Danaher saw Plaintiff again on October 11, 2016. At that visit, Dr. Danaher noted that Plaintiff's "CRPS symptoms are unlikely to improve until her right shoulder labral tear is surgically repaired." (Doc. 16 at 541.) Dr. Stayner performed surgery on Plaintiff's right shoulder in June of 2017. (Doc. 16 at 595.)

Following Plaintiff's surgery, Dr. Danaher noted Plaintiff's recovery was progressing. (Doc. 16 at 1154.) Dr. Danaher stated he was "very pleased with [Plaintiff's] progress" and noted Plaintiff "has been released to return to some form of employment, with restrictions, on a part-time basis." (Doc. 16 at 1154.) In December of 2017 Dr. Stayner noted Plaintiff's shoulder was still a "little bit stiff", restricted her to lifting 10 pounds, and found Plaintiff "maximally medically improved at this point[.]" (Doc. 16 at 893.) However, in February 2018 Dr. Stayner noted Plaintiff reported worsening pain in her shoulder and stated Plaintiff "is slowly coming off of her medication." (Doc. 16 at 893.)

Plaintiff argues the ALJ failed to properly consider the evidence in concluding Plaintiff's CRPS was not a medically determinable impairment. (Doc. 18 at 11.) The ALJ relied on SSR-03-02p to conclude that the medical evidence in the record does not support finding CRPS to be a medically determinable impairment. (Doc. 16 at 23-24.) The ALJ reasoned that none of the evidence

indicated the presence of the medical signs necessary to establish a medically determinable impairment. (Doc. 16 at 23-24.) Instead, the ALJ explained that the medical evidence discussing Plaintiff's apparent CRPS was not reliably documented from firsthand observation, did not cite supporting findings, and relied solely on evidence of continuing pain and range of motion restrictions. (Doc. 16 at 24.) The ALJ also relied on an explanation from Dr. Fernandez concluding Plaintiff could not satisfy the CRPS criteria. (Doc. 16 at 24.)

A medically determinable impairment must be established through objective medical evidence, such as medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1521. A diagnosis or medical opinion is insufficient to establish the impairment's existence. 20 C.F.R. § 404.1521. For purposes of establishing CRPS as a medically determinable impairment, any of the following signs in combination with persistent complaints of pain will suffice:

> Swelling; autonomic instability – seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating, changes in skin temperature, and abnormal pilomotor erection (gooseflesh); abnormal hair or nail growth (growth can be either too slow or too fast); osteoporosis; or involuntary movements of the affected region of the initial injury.

SSR-03-02p.

Here, Dr. Clinton noted Plaintiff had "exquisite pain with any attempt at

palpation or range of motion" and "significant allodynia over the lateral muscle belly." (Doc. 16 at 966.) Dr. Danaher provided Plaintiff with four nerve blocks to alleviate the pain in her arm, and Dr. Stayner confirmed her CRPS diagnosis. (Doc. 16 at 411, 544-51.) In addition to Plaintiff's documented complaints of pain, including allodynia, PA-C Lipp examined Plaintiff and observed "bluish hue of the right arm, and the right arm feels chilled." (Doc. 16 at 523.) These signs are indicative of autonomic instability – "changes in skin color . . . changes in skin temperature[.]" SSR-03-02p. The Commissioner's attempt to discredit PA-C Lipp's observation as "unclear" and potentially based on the Plaintiff's description of "the presence of the bluish hue immediately following her injury" is not persuasive. (Doc. 19 at 9.) Nothing in PA-C Lipp's examination note supports the Commissioner's interpretation. There is sufficient evidence in the record to establish Plaintiff's CRPS is a medically determinable impairment. *Johnson v. Saul*, 2021 WL 943756, *1 (9th Cir. 2021) (physician's diagnosis and recorded medical signs were sufficient "to conclude than an impairment is medically determinable.").

Although the ALJ erred in finding Plaintiff's CRPS was not a medically determinable impairment, the error was harmless. The ALJ included "all of the objective findings related to the claimant's upper right extremity limitations" associated with CRPS in determining the residual functional capacity. (Doc. 16 at

24.) For example, the RFC included limitations accounting for Plaintiff's shoulder pain by limiting her to light work and limiting the amount of weight she can lift with her right arm. (Doc. 16 at 25.) The ALJ also considered Plaintiff's reported CRPS and the opinions of Dr. Stayner and Dr. Danaher in formulating the RFC, including Plaintiff's right extremity pain improvement. (Doc. 16 at 27-28.) Accordingly, the ALJ's error in failing to finding CRPS to be a medically determinable impairment was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error at step two is harmless where the ALJ considered limitations of impairment at step four).

**B.    The RFC Finding**

Plaintiff argues the ALJ's RFC finding is not supported by substantial evidence in the record. Plaintiff contends that although the RFC limits her to light work, she is incapable of performing even sedentary work. Plaintiff cites various medical records and her testimony to support her claimed limitations. (Doc. 18 at 14-15.) However, Plaintiff's general argument that the RFC is not supported by substantial evidence is more properly addressed with respect to her specific disputes with the ALJ's consideration of the evidence. For example, the Court will consider whether the ALJ discounted Plaintiff's testimony based on substantial evidence, and how any potential error impacted the ALJ's RFC determination. The Court will not

conduct a de novo review by reweighing the evidence in the record and substituting its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th. Cir. 2002).

Even construing Plaintiff's RFC argument as a facial challenge, the Commissioner aptly points out that the ALJ considered both Plaintiff's testimony and the medical opinions assessing more severe functional restrictions than those provided in the RFC. However, the ALJ found the evidence relied on by Plaintiff to be inconsistent and unreliable. (Doc. 19 at 10-11; Doc. 16 at 25-32.) For example, the ALJ reasonably relied on treatment notes finding Plaintiff was uncooperative with testing, functioned in a manner contradictory to her claimed ability, and exhibited improvement in her condition. (Doc. 16 at 25-32.) Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). The Court does not find the RFC unreasonable on its face. Accordingly, Plaintiff's general challenge to the RFC is without merit.

### C.    The ALJ's Past Relevant Work Finding

At step four, the ALJ determined Plaintiff retained the residual functional capacity to perform her past relevant work as a mortgage clerk. (Doc. 16 at 32-33.) Plaintiff argues the ALJ erred by failing to correlate Plaintiff's RFC with the duties

of Plaintiff's past relevant work. Plaintiff specifically argues the ALJ did not consider Plaintiff's need to be off task for two hours each day or Plaintiff's absence from work for more than three days per month. (Doc. 18 at 16-17.) In response, the Commissioner argues the ALJ reasonably found Plaintiff could perform her past relevant work based on the testimony of a vocational expert.

It is Plaintiff's burden of showing that she can no longer perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must, however, "make the requisite factual findings to support [her] conclusion." *Pinto*, 249 F.3d at 844. Accordingly, it is the ALJ's duty to examine a plaintiff's "residual functional capacity and the physical and mental demands' of [plaintiff's] past relevant work." *Pinto*, 249 F.3d at 844-45. *See also*, 20 C.F.R. §§404.1520(e). The ALJ can find a plaintiff capable of performing her past relevant work as "actually performed," or, "as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, *2 (1982).

Here, the record reflects that the ALJ considered Plaintiff's ability to perform her past relevant work as a rural mail carrier and mortgage clerk. (Doc. 16 at 33.) The ALJ discussed her colloquy with the vocational expert and relied on the expert's testimony. (Doc. 16 at 33.) The ALJ explained that although the vocational expert testified that Plaintiff could perform her past relevant work as both a

mortgage clerk and a rural mail carrier, the ALJ determined Plaintiff could not perform as a rural mail carrier based on Plaintiff's functional limitations on concentrated exposure to temperature extremes. (Doc. 16 at 33.) However, the ALJ relied on the vocational expert's testimony regarding Plaintiff's ability to perform her past relevant work as a mortgage clerk, both as generally performed in the national economy and as actually performed by her. (Doc. 16 at 33.) An ALJ may properly rely on the testimony of a vocational expert to determine whether a claimant is able to perform their past relevant work. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

The job of mortgage clerk is classified by the Dictionary of Occupational Titles as a sedentary exertion job as generally performed. (Doc. 16 at 33.) The vocational expert testified that Plaintiff performed her job as a mortgage clerk at a light level. (Doc. 16 at 33, 70.) The ALJ determined the vocational expert's testimony to be reliable based on the expert's education and over thirty years' experience as a vocational professional. (Doc. 16 at 34, 74.) However, apart from relying on the vocational expert's testimony, the ALJ did not look at the "residual functional capacity and the physical and mental demands of the [Plaintiff's] past relevant work." *Pinto*, 249 F.3d at 845. Although vocational expert testimony is helpful to aid the ALJ's determination at step four, the ALJ is still required to make

findings of fact. *Pinto*, 249 F.3d at 845; SSR 82-62 (the determination that a claimant can perform her past relevant work must contain specific findings of fact concerning her RFC, the physical and mental demands of the past job, and the ability to return to the past job in light of the RFC). *See also*, *Patrick v. Astrue*, 2009 WL 36771, *5 (E.D. Wash. Jan 6, 2009) ("In finding that an individual has the capacity to perform past relevant work, the ALJ's decision must contain among the findings a finding of fact that the individual's RFC would permit a return to his past job or occupation.") (citing SSR 82-62). Here, the ALJ erred at step four by failing to make these specific findings of fact.

The ALJ alternatively found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed, including clerk/typist and receptionist. (Doc. 16 at 34.) The Commissioner therefore argues that any error the ALJ made at step four is harmless. The Court agrees. Since the ALJ proceeded to step five of the disability analysis, the ALJ's error at step four is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding ALJ's step four error harmless where the ALJ provided an alternative finding at step five that claimant could perform other work existing in the national economy).

It is apparent from the ALJ's step five finding that she relied on the RFC, the

Medical-Vocational Guidelines, and the vocational expert's testimony to find Plaintiff capable of performing other work in the national economy. (Doc. 16 at 34.) The ALJ also explicitly considered Plaintiff's right arm impairments in determining Plaintiff's capability to perform other work. (Doc. 16 at 34.) For example, the ALJ found Plaintiff capable of performing the jobs of clerk/typist and receptionist, but determined the occupation of data entry clerk "requires constant fingering per the DOT, and that it could not be reasonably be [sic] accomplished with the left hand only, so that job was not considered as viable other work within the claimant's RFC." (Doc. 16 at 33.) Finally, the jobs of clerk/typist and receptionist are both sedentary jobs even though the RFC finds Plaintiff capable of performing light work. (Doc. 16 at 25, 34.)

Plaintiff did not file a reply brief as allowed under the briefing schedule, and so has not responded to the Commissioner's argument that any error at step four was harmless. As discussed above, the ALJ step four determination is harmless error based on the ALJ's alternative step five finding. The ALJ's step five finding is consistent with the RFC and reasonably accounted for Plaintiff's limitations in finding she could perform other work existing in the national economy. Absent any argument by Plaintiff in reply to the Commissioner's argument on this issue, and because the ALJ provided legally sufficient reasons in support of her step five

finding, the Court finds that Plaintiff has not shown that the ALJ's error at step four resulted in harmful error. See *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir, 2011) (the claimant bears the burden of the showing that the ALJ erred and that any error was harmful).

### D. The ALJ's Credibility Determination

Plaintiff's final argument alleges the ALJ's credibility determination was erroneous because it is not properly supported by medical evidence. (Doc. 18 at 17.) Plaintiff specifically argues the ALJ did not provide reasons for discounting Plaintiff's testimony that she needed to lay down after taking her pain medicine and for finding Plaintiff capable of working with her non-dominant hand.

The credibility of a claimant's subjective symptom testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. If the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Vasquez*, 572 F.3d at 591.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).

In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony she finds not credible, and linking that testimony to the particular parts of the record supporting her determination. *Brown-Hunter,* 806 F.3d at 494.

Here, the first step of the credibility analysis is not in issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, and there is no argument the Plaintiff is malingering. (Doc. 16 at 26.) Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony

about the severity of her symptoms. The reasons provided by the ALJ are sufficient to sustain her rejection of Plaintiff's subjective testimony.

The ALJ began by summarizing the Plaintiff's statements about her symptoms and abilities as reported at the hearing. (Doc. 16 at 25.) The ALJ then concluded that the limiting effects of Plaintiff's reported symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc. 16 at 26.) The ALJ found that Plaintiff's alleged functional level was inconsistent with the medical records for several reasons. In particular, the ALJ found discrepancies between Plaintiff's testimony and the objective medical record documenting Plaintiff's ongoing treatment to her right shoulder. (Doc. 16 at 26.) The ALJ reviewed the objective medical testing which revealed a SLAP tear in 2015, "but a bone scan in May 2016 was entirely normal" and "[n]erve conduction/EMG testing in 2016 and 2017 was entirely normal except for evidence of mild right carpal tunnel syndrome." (Doc. 16 at 26.)

The ALJ also examined the treatment notes from Plaintiff's various doctors. (Doc. 16 at 26-32.) To highlight the lack of medical record support for Plaintiff's claimed limitations, the ALJ cited notes indicating Plaintiff was uncooperative when Dr. Evans attempted to evaluate the strength of her right arm. (Doc. 16 at 27.) The ALJ pointed out that Dr. Evans found Plaintiff's "muscle tone was intact and

there was no measured asymmetry or atrophy" to support a finding that Plaintiff had no strength in her arm. (Doc. 16 at 27.) The ALJ also pointed to treatment notes in March 2017 stating that Plaintiff "tolerated only limited range of motion testing, but [Dr. Adkins] observed that she seemed to freely use her arm moving and going through her purse." (Doc. 16 at 27.)

The ALJ also relied on treatment notes from Dr. Griffin and Dr. Danaher to show inconsistencies in Plaintiff's subjective symptom testimony. (Doc. 16 at 27.) For example, in March 2017, Dr. Griffin noted Plaintiff's left-hand grip was "notably stronger" than the right-hand grip, but that Plaintiff stated this result was "not due to pain." (Doc. 16 at 27, 1224-225.) The ALJ also pointed out that in 2017 Dr. Danaher noted, "[f]rom the CRPS standpoint, I am pleased to see that [Plaintiff's] symptoms are not as severe as they were prior to surgery[.]" (Doc. 16 at 27, 610.) The ALJ also relied on additional treatment notes from Dr. Danaher and Dr. Stayner finding Plaintiff's pain improving. (Doc. 16 at 27.)

The ALJ also specifically discussed Plaintiff's testimony that she lies down for about two hours after taking her pain medication and has limited efficiency with her left hand. (Doc. 16 at 26.) However, the ALJ determined Plaintiff's testimony was not fully reliable. The ALJ proceeded to identify which of Plaintiff's statements she found to be inconsistent with the medical evidence. The ALJ discussed

Plaintiff's statements about her daily activities and properly identified multiple medical records demonstrating those inconsistencies. (Doc. 16 at 32.) For example, the ALJ identified "three main reasons" for finding Plaintiff's testimony unpersuasive. (Doc. 16 at 32.) The ALJ found Plaintiff's allegations could not be objectively verified, there was an inability to connect the severity of Plaintiff's allegations with the medical evidence, and the record indicated Plaintiff made inconsistent statements about her daily activities. (Doc. 16 at 32.) The ALJ supported her finding with treatment notes demonstrating the inconsistencies between the medical evidence and Plaintiff's statements. For example, Plaintiff testified she could "lift only small objects like a toothbrush," yet Dr. Stayner opined she could lift 10 pounds. (Doc. 16 at 32.)

Plaintiff also testified she could "use a keyboard only one minute, write only one minute, had difficulty following instructions . . . and walk no more than 30 minutes at a time[.]" (Doc. 16 at 32.) However, the ALJ pointed out that Plaintiff reported to the consultive examiner that she "helps her mom with the domestic chores, likes to cook, plays computer games, googles information and has a Facebook page, and participates in church activities such as visiting shut-ins." (Doc. 16 at 32.) The ALJ also noted the Plaintiff's statements were contradictory to the daily activities reported by her mother. (Doc. 16 at 31, 32.) *Orn v. Astrue*, 495 F.3d

625, 639 (9th Cir 2007) (An ALJ may discount a claimant's subjective testimony based on the claimant's reported activities if those activities contradict the claimant's testimony or are transferable work skills). The ALJ reasonably determined that although "these activities do not alone demonstrate an ability to engage in sustained work activity, they do suggest a far greater ability to function that indicated by the degree of pain and limitations alleged by the claimant in the record and at the hearing[.]" (Doc. 16 at 32.) *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (evidence of a claimant's level of activity that is inconsistent with the claimant's claimed limitations has "bearing on Claimant's credibility.").

Ultimately, the Court finds the ALJ reasonably explained how the medical records and Plaintiff's activities contradicted her testimony. The ALJ provided clear and convincing reasons for finding claimant's subjective symptom testimony not credible. *Brown-Hunter*, 806 F.3d at 494. As set forth above, the ALJ specifically identified inconsistencies between Plaintiff's statements and the objective medical evidence and linked that testimony to the record. *Treichler v. Commissioner*, 775 F.3d 1090, 1103 (9th Cir. 2014) (The ALJ must provide specific findings in support of her credibility determination). *See also*, *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (Even if the record is "susceptible to more than one rational interpretation," if the ALJ's decision is supported by substantial evidence it must be

upheld."). For these reasons, the Court concludes that the ALJ's credibility finding is properly supported by specific, clear and convincing reasons.

## IV.   <u>Conclusion</u>

Based on the foregoing, the Court concludes that the ALJ's decision is based on substantial evidence and is free of prejudicial legal error. Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment be DENIED and the Commissioner's decision denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits be AFFIRMED.

DATED this 1st day of July, 2021.

Kathleen L. DeSoto
United States Magistrate Judge